THE AMERICAN METAL COMPANY OF NEW MEXICO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65493.    Promulgated July 17, 1934.

*Joseph B. Cotton, Esq.*, and *Samuel Brenner, Esq.*, for the petitioner.

*Harold Allen, Esq.*, for the respondent.

OPINION.

SMITH: The petitioner contends that the respondent erred in computing its depletion allowances for 1927, 1928, and 1929 upon a cost basis of $1,495,577.66 as of December 31, 1924, and that the correct basis is the actual cost of the assets to the petitioner on November 30, 1925, which it claims was $4,250,000.

The respondent's determination is based upon the theory that the petitioner acquired the assets in question by a statutory reorganization in 1925; that is, that the petitioner is a reorganization of the Pecos Corporation, and that the basis for depletion allowances to the petitioner is the same as it would have been in the hands of the transferor, the Pecos Corporation. On the other hand, the petitioner contends that it acquired the assets by purchase from the Goodrich-Lockhart Co. upon its organization on November 30, 1925, and that the basis is therefore the cost to it of the assets, which, since it paid only its own stock and securities, is the fair market value of the property at the date of acquisition.

The Revenue Acts of 1926 and 1928 provide that the basis upon which depletion is to be allowed is the same as is provided for the purpose of determining gain or loss upon the sale or other disposition of property, which, with certain exceptions, is the cost thereof with respect to property acquired after February 28, 1913. See section 204 of the Revenue Act of 1926, and sections 113 (a) and 114 (b) (1) of the Revenue Act of 1928. The only exception to this rule with which we are concerned in this proceeding is that where the property was acquired by a nontaxable reorganization the basis remains the same as it would have been in the hands of the previous owner or transferor. See provisions relating to reorganizations contained in section 204 (a) (7) of the Revenue Act of 1926, and section 113 (a) of the Revenue Act of 1928.

The respondent in his brief filed in this proceeding has conceded that petitioner did not acquire the property in question, that is, the Pecos Mine, by a statutory reorganization, citing *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) .77; affirming 25 B.T.A. 1254. He admits that the basis for computing depletion allowance is the fair market value of the property as of November 30, 1925, the date of its acquisition by the petitioner. We therefore limit our inquiry to that question only, namely, the value of the Pecos Mine at November 30, 1925.

As above indicated, the petitioner claims that the fair market value of the Pecos Mine on the basic date was $4,250,000. Such valuation is predicated upon the report made upon the mine by Otto Sussman, an eminent mining engineer who submitted the report dated December 4, 1925, incorporated in our findings. To sustain that valuation the petitioner has adduced before the Board the testimony of Sussman and a number of other witnesses. The respondent, on the other hand, contends that the fair market value of the mine on the basic date was not in excess of $1,500,000. In support of such contention the respondent introduced the evidence of one John Alden Grimes, a mining engineer in the service of the Bureau of Internal Revenue, engaged in valuing mines for tax purposes. In arriving at his value of approximately $1,500,000 Grimes used the data adduced in evidence by Sussman.

Sussman's estimate is based upon the proposition that it would take approximately two years to complete a smelting plant and to prepare the mine for operation; that the mine had an ore reserve of approximately 1,000,000 tons; that the ore reserve would require the operation of the mine for a period of five years; that the estimated profits from operation over such period would be $8,890,000, or an annual profit of $1,778,000. By the method of valuation used by Grimes the fair market value of the mine on November 30, 1925, is computed to be $1,428,570.

The assumptions of the Government's witness as to rates of interest to be used in reducing the estimated earnings over the period of operations to a present worth value on November 30, 1925, is strongly opposed by petitioner's witnesses, who contend that the fair market value on the basic date was $4,250,000.

We are of the opinion that it is not necessary to analyze exhaustively the various contentions of the petitioner's witnesses as opposed to those of the Government's witness. We are of opinion that there is other evidence which more nearly establishes the fair market value of the Pecos Mine on November 30, 1925.

Prior to the sale of the Pecos Mine to the petitioner in November 1925, all of the capital stock of the company owning the mine was owned by the Goodrich-Lockhart Co. That company parted with its ownership in the mine for a cash consideration of $1,000,000 plus $500,000 noninterest-bearing, 10-year, second mortgage bonds and a 48 percent interest in the stock of the petitioner corporation. The $1,000,000 cash was paid to it by the American Metal Co., Ltd., a New York corporation, for which that company was given $1,000,000 of the 8 percent first mortgage bonds of the petitioner company. The American Metal Co., Ltd., was to advance an additional amount of approximately $2,000,000 to the petitioner company, secured by an additional issue of first mortgage bonds, the first mortgage bonds to be redeemed in their entirety out of the first profits of operations of the petitioner. It was only after the first mortgage bonds should be redeemed in their entirety, together with interest, that any of the profits were to be utilized in the redemption of the second mortgage bonds and in payment of dividends upon the stock. Whether these bonds or the shares of stock had any fair market value either on November 30, 1925, or at any subsequent date is not shown by the evidence. The evidence does show, however, that there was never any transaction in them.

The respondent has determined that the Goodrich-Lockhart Co. parted with 70 percent of the estimated profits from the enterprise for a cash payment of $1,000,000 for the mine; that on this basis the mine was worth not more than $1,500,000 cash on November 30, 1925; and that this is a sale of controlling interest for cash by a willing seller to a willing buyer and should be " absolutely conclusive evidence of the value of the mine."

Although the opinion of experts in a question of this character is entitled to weight, those opinions are not conclusive upon the Board. *Uncasville Mfg. Co.* v. *Commissioner*, 55 Fed. (2d) 893. Where the testimony of experts varies so widely as the testimony of the several experts in this proceeding, the Board is not measurably enlightened thereby

.It is at once apparent that the American Metal Co., Ltd., acquired a 51 percent interest in the stock of the petitioner corporation at a cash outlay of very little, if any, for the stock. Indeed, it seems that the stock was given to that company as an inducement to it to advance money to the petitioner, to be secured by first mortgage bonds which were all to be retired before any profits would accrue to the second mortgage bondholder or to the stockholders.

The computation of the respondent, that the Goodrich-Lockhart Co. parted with a 70 percent interest in the estimated profits to be realized from the operation of the Pecos Mine for a cash consideration of $1,000,000, appears to be substantially correct. In the light of all of the evidence we sustain the respondent's contention that the cost of the Pecos Mine to the petitioner was not in excess of $1,500,000, which we have found as its fair market value on November 30, 1925.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

LEECH dissents.